E-FILED
Monday, 20 June, 2016  02:34:39 PM
Clerk, U.S. District Court, ILCD

# IN THE
# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JAMES W. DUNCAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.  16-cv-1118 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER & OPINION

This matter is before the Court on "Petitioner's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" filed on April 21, 2016. (Doc. 1). The parties have fully briefed the motion and the Court conducted a hearing on June 8, 2016 in which the parties submitted evidence and argument. For the reasons stated below, the motion is granted.

## BACKGROUND

On November 14, 2006, Petitioner was convicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (Judgment, *United States v. Duncan*, No. 06-cr-10005 (C.D. Ill. 2006), Doc. 34). Ordinarily, this would carry a sentence of not more than 120 months pursuant to 18 U.S.C. § 924(a)(2). However, the Court sentenced Petitioner to 188 months because it found him to be an armed career criminal under the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e). (Judgment, *United States v. Duncan*, No. 06-cr-10005 (C.D. Ill. 2006), Doc. 34). The ACCA requires courts to impose a minimum fifteen-year term of

imprisonment for criminals convicted of unlawful possession of a firearm under 18 U.S.C. § 922(g), who have three prior state or federal convictions for violent felonies or serious drug offenses committed on occasions different from one another. 18 U.S.C. § 924(e). Three convictions were presented in the United States Probation Office's pre-sentence report that could have served as predicates for imposing the fifteen year enhanced minimum sentence. The first was a conviction for a 1987 burglary occurring in LaSalle County, Illinois. The second was a conviction for a 1991 attempted burglary in Livingston County, Illinois. The third was a conviction for an arson/burglary in Putnam County, Illinois in 1992. The attempted burglary fit into the now-defunct residual clause of 18 U. S. C. § 924(e)(2)(B)(ii): "*or otherwise involves conduct that presents a serious potential risk of physical injury to another.*"

The United States Supreme Court confirmed that attempted burglary of the sort Duncan was convicted of fell into the residual clause in *James v. United States*, 550 U.S. 192 (2007). Last year, the Supreme Court held in *Johnson v. United States*, 135 S.Ct. 2551 (2015), that the residual clause of § 924(e)(2)(B)(ii) was void for vagueness and specifically mentioned that *James* was overruled. *Id.* at 2563. Recently, that court also held that *Johnson* applies retroactively to cases on collateral review. *Welch v. United States*, 2016 U.S. LEXIS 2451 (U.S. Apr. 18, 2016). The holdings of these cases mean that attempted burglary under Illinois law can no longer suffice as a violent felony in current sentencings or past sentencings. The Court does not understand the Government to dispute its understanding of the case law.

However, the Government responds that even without the Livingston County attempted burglary, Duncan still has three qualifying violent felonies for purposes of satisfying § 924(e) because there is still the LaSalle County burglary, the Putnam County burglary, and the Putnam County arson. Although listed in the PSR as a single conviction, the Government contends the Putnam County offenses occurred separately under the relevant case law. Specifically, the Government argues that the facts of the Putnam County offenses—as recounted in an Illinois appellate opinion—demonstrate that the arson and burglary did not arise out of a single occurrence under legal precedent. Duncan disagrees and contends that the Illinois appellate opinion cannot be relied on as a matter of law for this sort of judicial determination, and even if it could, does not establish by a preponderance of the evidence that the two Putnam county offenses occurred separately.

## LEGAL STANDARDS

Section 2255 of Title 28 of the United States Code provides that a sentence may be vacated, set aside, or corrected "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" as well as for other reasons not relevant here. "Relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Thus, § 2255 relief is limited to correcting errors of constitutional or jurisdictional magnitude or errors constituting a fundamental defect that results in a complete miscarriage of justice. *E.g.*, *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994), overruled on other grounds by

3

*United States v. Ceballos*, 26 F.3d 717 (7th Cir. 1994). "A § 2255 motion is not a substitute for a direct appeal." *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003) (citing *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995)). Generally, a 2255 motion must be filed within one year of the date the judgment against the petitioner became final. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court... denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). However, sub-paragraph (f)(3) provides that a 2255 motion may be timely if it is brought within one year of the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(3).

## DISCUSSION

*Johnson v. United States*, 135 S.Ct. 2551 (2015), was decided on June 26, 2015. Petitioner filed this 2255 motion on April 21, 2016. Pursuant to 28 U.S.C. § 2255(f)(3), the petition is timely. No other procedural impediments exist to prevent the Court from hearing this motion.[1]

The essential question before the Court is whether Duncan's 1992 arson and burglary offenses in Putnam County, Illinois occurred on separate occasions. If they

---

[1] The Government argues in its Response that Duncan's claim is actually procedurally defaulted but that it is the Government's policy to waive this defense if the underlying claim is meritorious. Because the Court finds the 2255 motion to be meritorious, it would be a superfluous exercise to address procedural default any further even though a court may reach the issue on its own will. *Oakes v. United States*, 400 F.3d 92, 97 (1st Cir. 2005) ("[A] district court has the discretion, in a section 2255 case, to raise questions of procedural default *sua sponte*, even when the government has filed a reply and eschewed any reference to that defense.").

did, then Duncan's sentence enhancement was proper. However, if they did not occur on separate occasions, then the penalty prescribed in 18 U.S.C. § 924(e) cannot apply to Duncan's § 922(g) conviction. In *United States v. Hudspeth*, 42 F.3d 1015 (7th Cir. 1994), the Seventh Circuit explained that a defendant will be subject to the § 924(e) enhancement when at least three of the defendant's prior offenses resulting in conviction are found to have arisen out of separate and distinct criminal episodes. *United States v. Elliott*, 703 F.3d 378, 383 (7th Cir. 2012). The Court should look to whether "the perpetrator had the opportunity to cease and desist from his criminal actions" between the potential enhancement-qualifying offenses. *Hudspeth*, 42 F.3d at 1020.

In *Kirkland v. United States*, the Seventh Circuit made clear that a district court may only look to a small subset of evidentiary sources when conducting an inquiry under 18 U.SC. § 924(e) into whether offenses occurred on different occasions. 687 F.3d 878, 887 (7th Cir. 2012). Those sources are known as "*Shepard*-approved sources" because they were discussed in *Shepard v. United States*, 544 U.S. 13 (2005). These limited sources include the charging documents for the offense, the plea agreement or transcript of the plea colloquy in which the factual basis for the plea is confirmed by the defendant, or some other comparable judicial record of such information. *Id.* at 26. They also include jury instructions and documents that preserve the factual findings made by the fact-finder bearing on the statutory elements of the offense. *Taylor v. United States*, 495 U.S. 575, 576 (1990).

Some of the evidence presented to the Court falls within the specified categories listed in *Shepard*, but some do not. For example, before the Court is a

Putnam County criminal information for Duncan's arson offense. (Doc. 4-2). It states that Duncan committed arson on or about 2:00 a.m. on March 26, 1992. The Court was able to obtain the charging documents for Duncan's burglary offenses so the Court could compare the times and dates of the burglaries against the time and date of the arson. (*See* Exhibit A attached). Neither burglary information mentioned a time of the offense and both referred to the same date of March 26, 1992. Thus, no useful information was gleaned from these sources for purposes of discerning whether the arson and burglary offenses occurred on different occasions as a matter of law.

The parties also submitted jury instructions that were part of the common law record on appeal. (Doc. 7-1). They too fail to shed light on whether the arson and burglary occurred on different occasions.

The Government has also provided an appellate opinion of *People v. Duncan*, 634 N.E.2d 13 (Ill.App.Ct. 3d Dist. 1994), which is not one of the types of documents specifically approved in *Shepard*. In that opinion, the Illinois Appellate Court determined that Duncan was improperly convicted of a second burglary count alleging he had entered a building with the intent to commit arson when the evidence presented at trial did not establish there was an entry into the building in relation to that count. 634 N.E.2d at 15. It is the Government's position that this document establishes that the burglary Duncan did not appeal and the arson occurred on separate, sequential occasions. Before determining whether the Government is correct, the Court must first determine whether the Illinois

6

appellate opinion is a "*Shepard*-approved source." If it is not, the Court may not consider it.

## I.   *Shepard* Analysis

Duncan contends that the Illinois appellate decision is not a *Shepard*-approved source. In his original motion, he relied on the fact that appellate decisions were not explicitly mentioned in *Shepard* as being one of the categories of documents that are acceptable for use in a § 924(e) analysis. At the hearing, Duncan contended that the Court should note a distinction between *Shepard* documents where a defendant was convicted by trial by jury and *Shepard* documents where a defendant was convicted by pleading guilty. The Court does not believe such a distinction is necessary and more importantly, such a distinction has already been rejected in *Shepard*. 544 U.S. at 19 ("*Taylor's* reasoning controls the identification of generic convictions following pleas, as well as convictions on verdicts"). In this Court's opinion, the upshot of Duncan's argument is that the sort of information found in *Shepard*-approved documents is not the sort of information contained within the Illinois appellate opinion. The Government's position is that the catchall phrase "comparable judicial record" as used in *Shepard* and *Kirkland* is broad enough to encompass any appellate decisions in which the underlying facts surrounding the convictions are recounted.

The Court is unaware of any binding appellate decisions that specifically address whether an appellate opinion is a *Shepard*-approved evidentiary source. The evidence at issue in *Kirkland*, which was the defendant's proffered testimony and an affidavit, differed from an appellate decision in that they were not judicial

records confirmed by the defendant or the fact-finder. Instead they were defendant's one-sided recitations of events designed specifically for the sentencing hearing. 687 F.3d at 880. Similarly, the documents at issue in *Shepard*, police reports and complaint applications, were also not like an appellate court opinion because they were also not judicial records confirmed by the defendant or the fact-finder. Instead, they were law enforcement agent's one-sided recitations of events submitted to lower courts before formal charges had been brought. 544 U.S. at 21.

This Court is also unaware of any binding appellate decisions in which a court specifically explained what the term "comparable judicial record" means. From this Court's reading of the case law though, it seems clear that there is a requirement that a "comparable judicial record" used in a § 924(e) analysis must be a "conclusive record made or used in adjudicating guilt" that either records or summarizes the information found in the charging documents for the offense, the plea agreement or transcript of the plea colloquy in which the factual basis for the plea is confirmed by the defendant. *Shepard*, 544 U.S. at 21, *Elliott*, 703 F.3d at 382.

In *Kirkland*, the court stated that when determining "whether prior offenses occurred on occasions different from one another," courts are "limited to considering "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 687 F.3d at 886 (citing *Shepard*, 544 U.S. at 26). The *Kirkland* court explained that this *Shepard* evidentiary limitation properly preserves the Supreme

Court's holding in *Taylor* that "the plain language of the ACCA, its legislative history, and practical considerations require a formal categorical approach . . . . that permits the trial court to look only to the fact of conviction and the statutory definition of the prior offense <u>and not</u> to the facts underlying the prior conviction" when undertaking a § 924(e) analysis. 687 F.3d at 883-84 citing *Taylor*, 495 U.S. at 600-02 (emphasis added) (quotation marks omitted).  Based on these cases then, it is logical to understand the term "comparable judicial record of this information" to properly encompass only those judicial documents that preserve or otherwise detail the specific information found in the charging documents for an offense or a plea agreement or transcript of a plea colloquy in which the factual basis for the plea is confirmed by the defendant. Moreover, *Taylor* confirms that the specific information is the factual findings made by a fact-finder bearing on the essential statutory elements of the offense. 495 U.S. at 576.

Given these considerations, the Court disagrees with Duncan to the extent he seems to argue an appellate decision could not ever be a *Shepard*-approved source. Nor can the Court accept the Government's contention that all appellate decisions that recount the evidence presented at trial can suffice as *Shepard*-approved sources. The Court simply finds that in this specific case concerning the sequence of the offenses, the Illinois appellate court opinion offered into evidence by the Government is not a *Shepard*-approved document. This is so because the appellate court opinion does not contain or refer to the factual findings relating to the essential elements of the arson or the burglary convictions in sufficient detail to show the time of the burglary and arson offenses. *Shepard* documents are only

those judicial documents establishing or affirming a conviction of an offense in which the factual findings corresponding to the essential elements of the offense of conviction admitted by the defendant or found by the fact-finder are recounted. Unfortunately, this appellate decision is not useful in deciding whether the burglary and the arson offenses were simultaneous or sequential and the identifying information was not recorded in the charging documents or any other Shepard-approved sources.

While it is true that the appellate court considered some evidence put forth at Duncan's trial while determining whether there was sufficient evidence to support a second burglary conviction, *People v. Duncan*, 634 N.E.2d at 13 (discussing what the trial record revealed), there was no indication in the appellate court's opinion that the jury specifically found that the arson occurred separately from the burglary. For the appellate court decision to be a *Shepard*-approved source it must contain specific factual findings made by the fact-finder in Duncan's state case. And for it to be useful in the context of this case, those factual findings would need to be of the sort that would allow this Court to find the arson and burglary occurred separately; that is, facts illuminating the specific time and location of the two offenses. That information is not contained in the Illinois appellate court's opinion.

So, for example, had the criminal information for the arson referred to a specific time when the arson occurred, and the criminal information for the burglary detailed a specific time when the burglary occurred, and the appellate opinion recounted those facts, the Court would have found the appellate opinion to be a *Shepard* source. Or even had the opinion stated something to the effect that the jury

found the arson occurred after Duncan had already completed the burglary, the Court would have been more likely to find the opinion to be a *Shepard* source. But it did not, and under this Court's reading of the current binding law the appellate decision does not qualify as a *Shepard*-approved source.

Now one may believe this outcome places an unfair burden upon the Government, since it is well-established that in a case such as this, where the defendant was convicted by a jury after the conclusion of a trial, it would be extraordinarily rare to find any documentary evidence detailing the precise times and locations within a building where damage caused by an arson took place. Such specific facts are not necessary to find one guilty of arson and burglary in Illinois. *See Elliot*, 703 F.3d at 382 ("The facts that inform the determination of whether prior crimes occurred on different occasions—including the times and dates, places, and victims of those crimes—usually do not constitute essential elements of a conviction."). Indeed the jury instructions submitted to Duncan's jury[2] stated that:

> To sustain the charge of arson, the State must prove the following propositions:
>
> First: That the defendant, by means of fire, knowingly damaged the real property of Kathy Sipe, doing business as Four Corners Restaurant; and
>
> Second: That the defendant did so without the consent of Kathy Sipe.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

---

[2] There was some disagreement at the hearing whether these actual instructions reached the jury but the Court is satisfied that it is overwhelmingly likely that they did.

If you find from your consideration of all the evidence that anyone of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

(Doc. 7-1 at 20). There is no indication whatsoever of the specific time the arson occurred. The burglary instructions are also devoid of any reference to a particular time. (See Doc. 7-1 at 17-18). So the jury had no reason to make any finding as to when the arson occurred in relation to the burglary.

The *Kirkland* court anticipated this situation—where there would be a sparse factual record because juries are not generally required to make findings of non-essential facts—and already considered the impact of restricting evidentiary materials used for a different-occasions analysis to *Shepard*-approved documents. That court explained that the fact the Government may not be able to make its 924(e) showing in rare cases such as this is not a reason to expand the universe of *Shepard*-approved documents beyond what has been contemplated by *Shepard* and *Taylor*. 687 F.3d at 891-92 ("[I]n the vast majority of cases, proving that a defendant's prior convictions were 'committed on occasions different from one another' will impose no greater burden on the government than the government already has in proving the existence of three prior 'violent felony' convictions.... [I]t is only in exceptional cases such as this one, which have factually sparse records and factors that complicate the determination of whether the offenses occurred simultaneously or sequentially, that the government will find it difficult to meet its burden.... We do not think that the lack of available records shedding light on the different occasions inquiry should lead to a different result."). It is not this Court's

place to second guess what the Seventh Circuit and Supreme Court have decreed. This Court must apply binding precedent.

This Court has found one case in which a court explicitly considered whether an appellate decision was a *Shepard*-approved source and concluded that it was, even in light of the Supreme Court case law. *Cannan v. Hutchens*, No. SACV 09-01264-GAF, 2011 WL 2973554, at *9 (C.D. Cal. 2011). The *Cannan* court relied on Ninth Circuit precedent holding that documents not specifically listed in *Shepard* could nevertheless qualify as *Shepard*-approved sources if they had the hallmarks of "the reliability of court documents created as part of a process with Sixth Amendment safeguards." *Id*. The petitioner there conceded that an appellate decision could be a *Shepard*-approved source if such a decision reviewed an adjudicated process where witnesses were called and subjected to cross-examination and the rules of evidence applied. *Cannan*, 2011 WL 2972136, at *1 (C.D. Cal. July 19, 2011), aff'd, 479 F. App'x 756 (9th Cir. 2012). The court also found support in the fact that 28 U.S.C. § 2254(e)(1) instructs that the factual findings of state courts are presumed to be correct. *Id*. at *9. This Court finds that the reasons offered by the *Cannan* court are not compelling or alternatively, do not apply here.

First, this Court does not believe that the Illinois appellate court's analysis suffices as an "adjudication of guilt" as that term was referred to in *Shepard* and *Elliott*. Instead, the Court finds that when those courts were referring to adjudications of guilt they were referring to determinations of guilt made at the trial court level, whether done by a jury, a judge, or achieved through a defendant's admission. *See* 544 U.S. at 21; 703 F.3d at 382. This is the most common sense

understanding given that the primary concern of *Taylor* and its progeny is that district courts restrain themselves to only that evidence which contains the factual findings made by a fact-finder bearing on the essential statutory elements of the offense when conducting a § 924(e) analysis. 495 U.S. at 576. Thus, it is of no import that the Illinois appellate court was conducting a direct review of whether Duncan's actions supported a burglary conviction, and in so doing, was adjudicating whether or not Duncan could be found guilty of the burglary offense as a matter of law.

Second, although the appellate court clearly reviewed the trial record of Duncan's jury trial, (Doc. 4-1 at 1), which was unquestionably an adjudicated process where there was opportunity for witnesses to be called and subjected to cross-examination and the rules of evidence apply, the appellate court did not state in its opinion that it was reviewing the specific facts the jury found that supported Duncan's conviction. Moreover, the appellate court was not reviewing whether arson took place or when the arson took place in relation to the burglary. Instead, it was merely reviewing whether two counts of burglary could stand as a matter of law where the evidence presented at trial had demonstrated the defendant had only entered a property once.[3]

---

[3] The Government mentioned during the hearing that it would be able to pull the actual entire trial record if it needed to do so. This opinion should make it clear that the Court would not likely find the trial record itself to be a *Shepard*-approved source unless it contains the factual findings made by the jury bearing on the essential statutory elements of Duncan's convictions. Moreover, unless the trial record contains the jury's findings that proved the arson and burglary were separate and distinct, it would be of little use.

Third, it is true that Duncan was represented by counsel on appeal, which ensured that his Sixth Amendment rights were safeguarded throughout the appellate process. The opinion is the culmination of that process, unlike the non-qualifying documents at issue in *Shepard*—police reports and complaint applications—that are nothing more than the one-sided contentions of law enforcement agents. *See Shepard*, 544 U.S. at 16. But this point only demonstrates that the appellate opinion is more reliable than the documents at issue in *Shepard*; it does not establish that the appellate opinion contains the specific factual findings of Duncan's jury corresponding to the elements of the arson and burglary convictions. Without as much, it is not a *Shepard*-approved source.

Fourth, 28 U.S.C. § 2254(e)(1)'s instruction that the factual findings of state courts are presumed to be correct is not a compelling reason to find this appellate court opinion to be a *Shepard*-approved source. This Court believes the sort of factual findings that make a source *Shepard*-approved are simply not present in the Illinois appellate court opinion, so a presumption of correctness has no actual application here. Moreover, the Court is not sure one can cherry-pick a requirement from 28 U.S.C. § 2254 and seamlessly apply it to the adjudication of a 2255 motion.

For the foregoing reasons, this Court is confident that the appellate court opinion in *People v. Duncan*, 261 Ill. App. 3d 957, 634 N.E.2d 13 (1994) is not a *Shepard*-approved source that may be used in this Court's inquiry into whether Duncan's arson and burglary occurred on separate occasions.

## II.   Duncan Would Prevail Even If The Court Took the Appellate Opinion Into Consideration

Assuming arguendo that the Illinois appellate opinion is a *Shepard*-approved source, the Court would still hold that the Government has not met its burden of proof. The Government has the burden to prove to the Court by a preponderance of the evidence that a defendant committed at least three violent felonies on three separate occasions in order to apply the 924(e) enhancement. *Kirkland*, 687 F.3d at 889 ("we conclude that the more appropriate burden allocation for the separate occasions inquiry requires the government to establish by the preponderance of the evidence—using *Shepard*-approved sources—that the prior convictions used for the ACCA enhancement were 'committed on occasions different from one another.'"). The Court finds that even taking the appellate opinion into consideration, the preponderance of the evidence does not establish that Duncan committed the Putnam County offenses of burglary and arson on separate occasions under the case law.

The Illinois appellate court wrote:

The trial record reveals that when the Four Corners Tap, a restaurant and bar located at Magnolia, closed for the night on March 25, 1992, it was left in good condition. However, early the next morning, delivery men arriving at the establishment found the natural gas in the ovens turned on with the pilot lights off. Also, a juke box and poker machines had been pried open and rifled through. An empty money box and bottles of liquor were found lying on the floor. Liquor from the bottles had been splashed over the floor and walls. A milk jug which smelled of gasoline was also on the restaurant floor, and <u>two burned areas were found inside the building</u>. The window in front of the dining room had been broken, and <u>there was a scorched area under and around [the window]</u>.

*** 

Robert McLean, Jr., testified that he was with the defendant on the evening of March 25, 1992, and the next morning. McLean stated that

he and the defendant had driven by the Four Corners Tap the night of March 25, 1992, and discussed burglarizing the building and burning it down.

After collecting tools, a milk jug full of gasoline, and dark clothes, McLean and the defendant walked to the Four Corners Tap and pried open one of the doors. They went inside, pried open the poker machines and juke box, and took the money from them. McLean stated that he and the defendant then dumped liquor and gasoline on the floor and the walls <u>before lighting a slow starting matchbook fuse</u>. The two men left, returning to McLean's home. However, they went back to the restaurant later <u>because no fire had started in the building</u>. The defendant said they had to go back to "finish in case we left any evidence to incriminate us."

Defendant prepared a Molotov cocktail from a tomato juice bottle filled with gasoline. He told McLean to bring a rock to break the window. They drove to the Four Corners Tap. After McLean threw the rock through a window, the defendant hurled the Molotov cocktail toward the broken window. The device did not detonate inside the building, instead, <u>it detonated on the window frame</u>.

The men again returned to McLean's house and waited to hear the fire alarm. When they heard no alarm, they again returned to the Four Corners Tap. This time, the defendant tossed chameleon flower fireworks into the building through the broken window. The fireworks caused only momentary sparking. The defendant and McLean then went back to McLean's house and did not return to the Four Corners Tap again.

The jury found the defendant guilty of arson and both counts of burglary.

***

To carry out their plan to burn down the building they dumped gasoline over the floor of the building. They also dumped the contents of liquor bottles on the floor and walls and <u>lit a slow burning matchbook fuse</u>. Then they left, because <u>the contemplated fire did not start inside the building</u>, they returned twice to the Four Corners Tap that evening. During the two later visits to the Four Corners Tap, they did not physically enter the building. On the second return, the defendant threw some "sparkler type" fireworks through the broken window so that sparks from the fireworks would ignite the gasoline and liquor.

*People v. Duncan*, 634 N.E.2d 13, 13-14 (1994) (emphasis added).

The opinion is clear that Mr. Duncan only entered into the building once, thus he committed a single and distinct burglary. However, a jury could have found

two, if not three, possible arsons were committed: one that occurred while the burglary was in progress when Duncan lit a matchbook fuse, and two that occurred after the burglary had concluded when he hurled a Molotov cocktail and fireworks. There were at least two burned areas inside the building as a result of Duncan's efforts: one inside area that was possibly burned while Duncan was committing the burglary when he lit the slow-burning match fuse or when he threw in the fireworks,[4] and another burned area around and near the window frame, which unequivocally happened after the burglary had already been committed and concluded. The problem is the appellate opinion does not definitively state which damage (the burned area(s) inside the building or the window) was the predicate for the arson conviction.

Duncan rightly claims there is ambiguity concerning when he committed the arson. He contends that there is evidence that he committed the arson simultaneously with his burglary because there is evidence that he emptied out available accelerants on the premises and lit a slow burning matchbook fuse while he was still committing the burglary. However, there is also evidence that when he went back to the building after he had committed the burglary, he threw a Molotov cocktail that detonated on the window and burned it and then came back and threw

---

[4] The appellate opinion states there were two areas burned inside the building but the Court is unsure whether the appellate court was explaining there were three burned areas all together or the area on the inside of the window was the second burned area. If nothing more, this discussion should highlight the ambiguity of this evidence. Furthermore, the reported testimony of co-Defendant McLean that they returned to the Four Corners Tap after the burglary was completed to finish the arson because their efforts during the burglary had not produced the intended conflagration is not inconsistent with arson having already been committed by their efforts during the burglary.

fireworks in the building. He claims this ambiguity prevents a finding that the burglary and arson occurred separately. The Court agrees. The law is clear "that if the *Shepard*-approved documents before a district court are equivocal as to whether the offenses occurred on the same occasion, the ACCA does not apply." *Kirkland*, 687 F.3d at 889. Something is equivocal when it is ambiguous, susceptible to multiple interpretations. Oxford English Dictionary Online, available at http://www.oed.com/view/Entry/63848?redirectedFrom=equivocal) (accessed June 10, 2016).

The relevant statutory definition of arson in Illinois in 1992 was "[a] person commits arson when, by means of fire or explosive, he or she knowingly damages any real property, or any personal property having a value of $150 or more, of another without his or her consent." 720 Ill. Comp. Stat. Ann. 5/20-1. The opinion notes that the area around the window was scorched and burned but also that there were two burned areas inside the building. Scorched and burned are not so different in meaning that one can make a meaningful distinction in the amount or nature of damage caused by an act that scorched an area as opposed to an act that burned an area. In other words, the Court is not convinced that the appellate opinion establishes with any certainty that the damage caused to the window area resulted in Duncan's arson conviction or that the burned areas inside the building, of which one could have been caused by the lit fuse, was the damage that resulted in his arson conviction.

For these reasons, the Court finds that the Illinois appellate opinion, as well as the *Shepard*-approved documents before the Court, do not prove by a

preponderance of the evidence that the arson and the burglary occurred on different occasions such that Duncan's enhanced sentence can remain in place.

## CONCLUSION

For the reasons set forth above, Petitioner's "Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" filed on April 21, 2016. (Doc. 1) is GRANTED and Petitioner's sentence in *United States v. Duncan*, No. 06-cr-10005 (C.D. Ill. 2006) is VACATED for resentencing. This civil action is now TERMINATED.

Entered this 20th day of June, 2016.


_____
s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge

# EXHIBIT A

℗ 2 107-D

THORNBER GROUP 115

## STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE ___TENTH___ JUDICIAL CIRCUIT

___PUTNAM___ COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

vs.

JAMES W. DUNCAN, a/k/a JAMES
AUSTIN, a/k/a JAMES      (Defendant)
WEEK.
d/o/b  11/16/69    500 E. Pennsylvania, Peoria, IL
The states attorney of said county charges:

No. _92-CF-11_

## FILED

JUN 15 1992

_Susan J Draper_

Marshall Circuit Clerk, Putnam County, Illinois

That on___March 26___, 19_92_, in ___Marshall___ committed the offense of

___James W. Duncan___

___BURGLARY___

in that ___the said defendant entered a building owned by Kathy L. Sipe,___
___in Magnolia, Putnam County, Illinois, known as the Four Corners Tap with___
___the attempt to commit therein a theft,___

In violation of chapter___38___, section___19-1___, paragraph___(a)___, Illinois revised statutes

Class 2 Felony

_____ (State's Attorney)

STATE OF ILLINOIS

COUNTY OF___MARSHALL___

"OFFICIAL SEAL"
JOY A. SMITH
Notary Public, State of Illinois
My Commission Expires 8-1-93

The undersigned, on oath, says that the facts set forth in the foregoing
Information are true in substance and matter of fact.

_____

Signed and Sworn to Before Me

_June 12_, 19_92_

_Joy A. Smith_
(Official Capacity)

Information filed _June 12_, 19_92_ Bail set at $_50,000_
_Warrant_                                    order to issue.

_____ (Judge)

Defendant appears in open court _____, 19___
Defendant released on bail in sum of $_____ with security:_____
                                                    (Description of Security)
(surety:_____)
         (Name)                          (Address)
Dated _____, 19___
Defendant remanded to custody of sheriff for failure to give bail_____, 19___
cause continued until _____, 19_____, for _____

COURT COPY—White   DEFENDANT'S COPY—Canary
STATE'S ATTORNEY COPY—Pink   PEACE OFFICER'S COPY—Goldenrod                    (Judge)

IN THE CIRCUIT COURT
OF THE TENTH JUDICIAL CIRCUIT
PUTNAM COUNTY, ILLINOIS

FILED

OCT 01 1992

_Susan J Draper_
Circuit Clerk, Putnam County, Illinois

PEOPLE OF THE STATE OF ILLINOIS,  )
                                   )
            Plaintiff              )
                                   )
         - vs -                    )     NO.  92-CF-11
   JAMES W. DUNCAN, a/k/a JAMES    )          Count III
AUSTIN, a/k/a JAMES Week           )
            Defendant.             )

## CRIMINAL INFORMATION

NOW COMES NORMAN K. RAFFETY, STATE'S ATTORNEY, ON THE __01__
DAY OF __October__ ,19 __92__ , AND ALLEGES THAT AT OR ABOUT __2:00 A.M.__
ON __March 26__ ,19 __92__ , IN PUTNAM COUNTY, ILLINOIS James W. Duncan,
a/k/a James Austin, a/k/a James Week, DEFENDANT, OF __500 E. Pennsylvania St.,__
__Peoria, Il.__ , COMMITTED THE OFFENSE OF:

Burglary, in that said defendant, without authority, knowingly
entered a building owned by Kathy ——— ——— Sipe, doing business as
4-Corners Restaurant located on the northeast corner of the
intersection of Route 18  and Route 89, in rural Magnolia Township,
Putnam County, Illinois, with the intent to commit therein arson.

A class 2 felony.

IN VIOLATION OF CHAPTER ___38___ , SECTION ___19-1(a)___ , ILL. REV. STAT.

_Norman K Raffety_
State's Attorney

Subscribed and sworn to before me this _01_ day of _October_ ,19 _92_

Norman K. Raffety
State's Attorney
Putnam County Courthouse
Hennepin, Il. 61327
Phone:  815-925-7378

" OFFICIAL  SEAL "
SHERYLEE J. BRADY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6/9/96

Notary Public

_Sherylee J. Brady_

Clerk

Judge

( )
( )
( )

A-13